IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GERARDO REYNA,        ) | |
|     Petitioner,        ) | |
|         ) | |
| v.        ) | No. 3:15-CV-3584-L |
|         ) | |
| LORIE DAVIS, Director, TDCJ-CID,        ) | |
|     Respondent.        ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

    This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge follow.

**I.  Procedural Background**

    Petitioner filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his conviction for murder. *State of Texas v. Gerardo Reyna*, No. F-11000678 (203rd Dist. Ct., Dallas County, Tex., July 6, 2011). Petitioner was sentenced to life in prison.

    On March 27, 2013, the Fifth District Court of Appeals affirmed Petitioner's conviction and sentence. *Reyna v. State*, No. 05-11-00995-CR, 2013 WL 1317223 (Tex. App. – Dallas, 2013, pet. ref'd). On August 21, 2013, the Court of Criminal Appeals refused Petitioner's petition for discretionary review. PDR No. 0401-13.

On November 6, 2014, Petitioner filed a state petition for writ of habeas corpus. *Ex parte Reyna*, Application No. 82,629-01. On November 4, 2015, the Court of Criminal Appeals denied the petition without written order on the findings of the trial court.

On November 5, 2015, Petitioner filed this federal petition. He argues:

1. He received ineffective assistance of counsel when counsel failed to locate and produce two crucial exonerating witnesses at trial:

2. He received ineffective assistance of counsel when counsel failed to file a motion for new trial after a key witness recanted her identification of Petitioner;

3. His due process rights were violated when false testimony was used to obtain his conviction; and

4. The State failed to disclose impeachment evidence for witnesses Roman Medina, Jesus Cardenas, and Michael Livermore.[1]

On February 16, 2016, Respondent filed her answer. On February 29, 2016, Petitioner filed a reply. The Court now finds the petition should be denied.

## II.  Factual Background

The following factual background is taken from the appellate court's decision.

> The evidence shows that a shooting occurred at about 11:30 p.m. on June 15, 2008 in a residential area in Irving. Sergeant Paul Tong, the first officer to arrive at the scene, indicated that he found the victim, Carlos Membreno, with a visible gunshot wound to his lower abdomen. Membreno's body was lying near the rear of a Lincoln Aviator SUV parked on the south side of the street, and Sergeant Tong opined that Membreno was dead when he arrived. Also present at the scene were Sonya Parks and

---

[1]This claim was not included in the petition, but was briefed in Petitioner's memorandum.

> Jesus Cardenas, who identified the suspect as a Hispanic male driving a black Lincoln. Later, Parks identified the shooter as appellant, an acquaintance of hers. Sergeant Tong found two small-caliber casings near the vehicle. The rear hatch and the passenger door to the vehicle were open, and there were bottles of alcohol near the vehicle.
>
> * * *
>
> [W]e conclude that a rational juror could have determined that appellant intentionally caused the death of Membrano. Appellant and Duncan were in contact via text message throughout the night, and appellant was angry that Duncan was out with two intoxicated men. Duncan told appellant the group was on the way to Parks's house, and as appellant turned in front of them, Duncan exclaimed "there he goes, he's going to get there before us." Although Duncan subsequently denied seeing appellant at the scene, she admitted that she saw his car. Immediately after the murder, Parks identified appellant as the person wielding the gun.
>
> On the morning after the murder, appellant told [Mike] Livermore he had shot somebody, and then had [Roman] Medina retrieve clothing, money and weapons from his home. That same day, Duncan remarked to appellant that she could not believe he had done "this." When the police finally caught up with appellant, he had attempted to flee. Unique types of handguns and ammunition of the same type as used in the murder were among the items Medina removed from appellant's home for him. . . .

*Reyna,* 2013 WL 1317223 at *6.

### III. Discussion

**1.    Standard of Review**

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), 28 U.S.C. § 2254 provide:

> (d)    An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id*.

**2.     Ineffective Assistance of Counsel**

Petitioner claims he received ineffective assistance of counsel. To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must

demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

    A.    **Exonerating Witnesses**

Petitioner claims his trial counsel was ineffective when counsel failed to locate and produce two exonerating witnesses, Lesly Morales and Maria Perez, for trial. On state habeas review, Morales and Perez both submitted affidavits and testified that Petitioner could not have committed the murder in Irving because at the time of the murder, they were both with Petitioner in Oak Cliff. (ECF No. 12-24 at 31, 43). Both Morales and Perez stated they would have testified at trial if defense counsel would have contacted them. (*Id*. at 34, 45). Morales testified she left a voice-mail twice with either Petitioner's attorney or his investigator, but she was not contacted. (*Id*. at 32.)

Morales also testified that although she visited Petitioner in jail approximately thirteen times, she never contacted the police to tell them she was an alibi witness. (*Id*. at 35.) Perez testified she also visited Petitioner while he was in jail awaiting trial, but she did not contact police, Petitioner's defense counsel, or anyone else to tell them she was an alibi witness. (*Id*. at 41-45.)

Petitioner's defense counsel also submitted an affidavit on state habeas review. Defense counsel stated:

> I remember very clearly my interviews with Mr. Reyna. Mr. Reyna indicated to me that he felt that he was justified in shooting the deceased. I explained legal justifications as they are set forth in the penal code and gave him some case law to read so that he could understand the legal principles underlying these legal justifications. Mr. Reyna never indicated that he was not present at the time of the shooting nor did he ever indicate that he had an alibi. My investigator, Paula Cook, who worked with me on this case, confirmed that there was never any discussion of alibi from the defendant or anyone she spoke with.

(ECF No. 12-27 at 51.)

The state habeas court found that Morales and Perez were not credible witnesses and denied this ineffective assistance of counsel claim. (ECF No. 12-27 at 158-59.) Petitioner has failed to show the state court's decision to deny relief was unreasonable or contrary to clearly established federal law.

**B.      Motion for New Trial**

Petitioner claims his counsel was ineffective for failing to file a motion for new trial after eyewitness Sonia Parks recanted her identification of Petitioner as the gunman. Petitioner claims Parks recanted her identification of Petitioner within the time-frame for filing a motion for new trial, but counsel failed to file the motion.

The record shows Sonia Parks did recant her trial testimony when she testified at the state habeas hearing. She stated she no longer believed she could identify Petitioner as the shooter, and that she did not who the shooter was. (ECF No. 12-24 at 53-55.) Although Parks testified she provided a hand-written statement disavowing her identification of Petitioner, she stated she did not provide this statement at the time of trial or shortly after trial. (*Id*. at 52.) Instead, she stated she provided the statement about one and a half to two years prior to the April 24, 2015, state habeas proceeding, which would have been approximately four years after the trial ended. Parks therefore provided her statement after the deadline for filing a motion for new trial. *See* Tex. R. App. P. 21.4 (stating motion for new trial must be filed within thirty days of the date sentence is imposed).

Additionally, Petitioner's trial counsel submitted an affidavit on state habeas review stating that she was never informed that Parks had recanted her eye-witness testimony. (ECF No. 12-27 at 51.)

Petitioner has failed to show his counsel was ineffective for failing to file a motion for new trial based on the recanted testimony of Sonia Parks.

### C. False Testimony

Petitioner claims his due process rights were violated when his conviction was obtained by the false testimony of Sonia Parks who testified at trial that Petitioner was the shooter. As discussed above, Parks later recanted this testimony

Under the Due Process Clause of the Fourteenth Amendment, the state cannot knowingly use perjured testimony. *Giglio v. United States,* 405 U.S. 150, 153 (1972). To prove that the state has violated his due process rights, a defendant must show that: (1) a witness for the state testified falsely; (2) the testimony was material; and (3) the prosecution knew that the testimony was false. *Id.* at 153-54; *see also*, *Napue v. Illinois,* 360 U.S. 264, 271 (1959).

In this case, Parks testified on state habeas review that at the time of trial she testified truthfully as to what she thought she saw that night. (ECF 12-24 at 58.) It was only later that she realized she could not identify Petitioner and that the shooter "could have been anybody." (*Id*. at 58-59.) Petitioner has submitted no evidence that the prosecutor knew Parks's testimony was false. Petitioner has failed to establish the state court's denial of this claim was unreasonable or contrary to clearly established federal law.

### 3. Impeachment Evidence

In Petitioner's memorandum, he argues the State failed to disclose that it offered three witnesses, (Roman Medina, Jesus Cardenas, and Michael Livermore), leniency in exchange for their testimony. He argues that the State's failure to disclosed this alleged impeachment evidence violated his due process rights.

#### (1) Roman Medina

The record shows that at the time of trial, Roman Medina had a pending state charge for unlawful possession of a firearm by a felon. (ECF No. 10-9 at 186.)

On cross-examination, Petitioner's counsel confirmed with Medina that he been to prison twice, and that he had the pending gun charge. (*Id*. at 195.) Counsel also confirmed that Medina's sentence exposure on the gun charge was twenty-five years to life in prison. (*Id*. at 196-97, 212.) Medina testified he was hoping to receive less than a twenty-five year sentence, but that the prosecutor had not offered him a plea deal for his testimony. (*Id*. at 197-198.) In response, Petitioner's counsel stated, "They can't offer you anything beforehand because I would make a big deal out of it, right?" (*Id*. at 198.) Petitioner's counsel also elicited testimony from Medina that his case had been pending for approximately three years and had been reset approximately twenty-six times. (*Id*. at 196.) Petitioner's counsel questioned Medina's motive to testify against Petitioner, stating, "You clearly have a motive to make all this up. You've got twenty-five years to life. . . ." (*Id*. at 212.)

Additionally, on direct examination, the prosecutor stated to Medina, "I can't make any deals with you up front, you understand that?" Medina responded, "You explained that to me, you already explained that to me." (*Id*. at 186-87.)

On state habeas review, the court held a hearing on Petitioner's claim. Medina's defense counsel stated there was no specific agreement with the State in exchange for Medina's testimony, but counsel assumed his testimony would be considered by the State in sentencing. (ECF No. 12-24 at 9-11.)

(2)  Jesus Cardenas

Jesus Cardenas testified on direct and cross-examination that he was facing pending state charges for DWI and retaliation. (ECF No. 10-10 at 64-65, 99.) On cross-examination he also stated he had pending federal charges for drug trafficking. (*Id*. at 103-06.) Cardenas faced a minimum ten-year sentence on the federal charges. (*Id*. at 106.) Petitioner's counsel asked Cardenas:

> Wouldn't it be helpful to you in your sentencing to say I participated and I helped, I helped in a murder case, so that you can get less time in the federal system?

(*Id*. at 107.) Cardenas denied that he was promised any plea deal in his federal case for testifying against Petitioner. (*Id*. at 107, 113, 118.) He stated he testified against Petitioner because the decedent was his friend and he wanted justice. (*Id*. at 107.)

At the state habeas hearing, Cardenas's defense counsel stated no one from the State made any promise or offer of leniency for Cardenas's testimony. (ECF No. 12-24 at 17-19.) Although the government in his federal case filed a motion for downward departure based on Cardenas's assistance in Petitioner's case, Cardenas's defense counsel stated Cardenas would have testified regardless of the motion for downward departure, because it was his friend who was murdered. (*Id*.)

### (3) Michael Livermore

Michael Livermore testified at trial that he had pending criminal cases for burglary of a habitation and possession of a controlled substance. (ECF No. 10-10 at 24-25.) He stated the charges were from March, 2009, and the cases had been passed for two years. (*Id*. at 26-27.) On state habeas review, Livermore testified there was no specific offer from the State for his testimony in Petitioner's case, but he believed his testimony would be taken into consideration. (ECF No. 12-24 at 24.) Livermore's defense counsel testified he did not recall any specific statement from the prosecutor regarding Livermore's testimony, but counsel thought Livermore would not have testified without expecting to gain consideration for his testimony. (*Id*. at 29.)

Additionally, on state habeas review the State prosecutor submitted an affidavit stating the State made no offers, promises or guarantees of leniency to any of these witnesses in exchange for their testimony. (ECF No. 12-27 at 136-37.) The state habeas court determined there no plea offers or promises of leniency by the State in exchange for these witnesses' testimony. (*Id*. at 162.)

The record shows the jury was informed that each of these witnesses had pending criminal charges, and that each witness hoped their testimony in Petitioner's case would be taken into consideration by the prosecutors in their pending cases. Petitioner, however, has failed to establish that the prosecutor made any specific plea deal to any of these witnesses in exchange for their testimony, or that the prosecutor failed to disclose impeachment evidence.

**6.     Summary**

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' decision to deny relief is not

contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### IV.  Recommendation

For the foregoing reasons, the Court recommends that Petitioner's habeas corpus petition pursuant to 28 U.S.C. § 2254 be denied with prejudice for failure to make a substantial showing of the denial of a federal right.

Signed this 5th day of December, 2016.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).